## Commonwealth v. Larson.

(Decided February 5, 1932.)

318

BAILEY P. WOOTTON, Attorney General, J. W. CAMMACK, Ex-Attorney General, and JAS. M. GILBERT, Ex-Assistant Attorney General, for appellee.

B. A. GUTHRIE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Certifying the law.

A part of section 1256 of our Statutes says:

"If any person unlawfully, but not with felonious intention, take, carry away, deface, destroy or injure any property, real or personal, or other thing of value not his own, . . . he shall be fined not less than ten nor more than two thousand dollars."

The appellee and defendant below, Fred Larson, was indicted thereunder by the grand jury of Jefferson county, and charged with unlawfully taking and carrying away, without felonious intent, an automobile, the property of Fred J. Spadie, and a lot of laundry (naming the articles) of the aggregate value of about $160, the property of Louis R. Metz, the owner and proprietor of the Kentucky Domestic Peerless Laundry, which he operated in the city of Louisville. At his trial thereon, defendant waived a jury, and an agreed stipulation of facts was

submitted to the court, and it found defendant not guilty. Complaining of that judgment, the commonwealth prosecutes this appeal to obtain a certification of the law.

The substance of the agreed facts were and are: That on August 15, 1930, the St. Helens Motor Company sold the involved automobile to Spadie under a contract wherein he agreed to pay in monthly installments the remainder of the consideration after crediting the cash he paid on the total sale price. Of that remainder he paid $195, leaving a balance due amounting to $117, and he defaulted on his monthly payment of $26 due May 13, 1931. In the meantime, the motor company transferred its contract and all obligations and rights thereunder to the Universal Credit Company; and at the time of the commission of the acts charged in the indictment the defendant, Larson, was an employee of the credit company. He was instructed by it to repossess the automobile, under the reserved title to it in the contract of sale, and to which reserved title the credit company succeeded under the provisions of section 2651b-34 of the 1930 Edition of Carroll's Kentucky Statutes, and which is section 34 of our Uniform Sales Act, and being chapter 148 of the Session Acts of 1928. Larson, in an effort to execute his instructions, started out in an automobile to find the one sold to Spadie for the purpose of taking possession of it, and he carried along with him another employee of the credit company by the name of Dickerson. They found the automobile in front of an oil station where Spadie had temporarily left it; he having gone into the station for some purpose. The two took possession of it and its contents; the latter of which consisted of eight bundles of laundry. They then drove the two automobiles to a garage within the city and which was located some distance away.

On arriving at the garage they unloaded the laundry from Spadie's automobile and put six bundles of it in the front seat of the one that Larson and Dickerson were using, and the two other bundles they put in its rumble seat. Larson then ordered Dickerson to take the bundles and deliver them to the laundry; Spadie being an employee of it, and using his automobile for gathering up and delivering laundry from and to customers. Dickerson delivered to the laundry six bundles of the articles to be laundered, but did not deliver the two that were put into the rumble seat, while Larson delivered the Spadie

automobile to the garage as the property of the credit company. The two bundles of laundry not delivered by Dickerson were discovered by Larson four days thereafter; but he did not deliver or offer to deliver them to the bailee, the laundry company, but left them with his employer, the credit company. The court held defendant not guilty under that state of facts, and we are called upon by this appeal to review that finding.

The statute evidently intended to punish the commission of acts, which, if done with a felonious intent, would constitute larceny, but if done without such intent would constitute the created misdemeanor. It is argued in support of the judgment appealed from that the seller of the automobile to Spadie, in the contract executed by him at the time, reserved title to the automobile under the provisions of section 2651b-20 of our present Statutes, and which is a part of our Uniform Sales Act, supra, and that the transfer of it to the credit company vested the latter with the same reserved title under the provisions of section 2651b-34, supra, of the same Statutes, and that under the principles announced in the case of Brown v. Woods Motor Co., 239 Ky. 312, 39 S. W. (2d) 507, the latter company by its agents and servants had the right to repossess itself, without legal procedure, of the automobile, and that Larson's act in doing so was not unlawful, and for which reason he did not commit the offense with which he was charged in the indictment as to the Spadie automobile. We do not interpret the Woods opinion as going to the extent so contended for. On the contrary, that opinion simply held that the rule prevailing in this state before the enactment of the Uniform Sales Act, to the effect that a reservation of title by the seller of personal property did not have the effect of continuing the title in him, but only gave him a lien upon the property sold, was repealed by the Uniform Sales Act.

The opinion in that case did not hold that the statutory enacted rule put the enforcement of the law into the hands of the owner of the title in such conditions, so that he could repossess himself of the property without judicial investigation, or so as to render him immune from the consequences thereof. It had long since been held, before the enactment of that statute, that a lien holder of that nature could repossess himself of the property sold, provided he did so peaceably and so as not

to commit a breach of the peace; and we find nothing in the statutes altering or in anywise qualifying that rule. See 55 Corpus Juris, 1287, sec. 1313. The statute, therefore, upon the phase of the case now under consideration, only enacted that the seller continued to remain the title holder of the property if he so stipulated in his contract of sale, and took him out of the category of only a lienor, as this court had held under the same circumstances before the enactment of the statute.

But passing the question as to defendant's guilt in taking and carrying away the Spadie automobile, we find that he also took and carried away personal property not in lien, nor the title to which was in the credit company, or any one else, except the owner thereof, and except the qualified title, as bailee, possessed by the laundry company. If it should be insisted that Larson or Dickerson, through and under his direction, carried away the bundles of laundry, or failed to deliver them, or any of them, to the owner, or to the possession of the bailee, it was necessary to produce guilt that they should knowingly do so, although it need not be felonious, and that the two bundles of laundry not immediately delivered or offered to be delivered was detained through a mistake, then the answer is that both Larson and Dickerson did knowingly carry away, not only two bundles of laundry that were left in the rumble seat of Larson's automobile, but likewise the other four bundles also; and it is our interpretation of the statute creating the offense (section 1256) charged in the indictment that it was the duty of Larson and Dickerson to at least leave the contents of the Spadie automobile with the latter; he having immediate possession of it, and to not assume to convey or transfer it to another, even though it be Spadie's employer, and who was the bailee of the property. In other words, conceding that they had the right to take the automobile, under the circumstances it would not follow that they also possessed the right to take and carry away its contents.

But if it should be further insisted that such interpretation should not apply to the four bundles of laundry that were conveyed to the laundry establishment, and if that insistence should be accepted by us, then the fact remains that the other two bundles of laundry that were taken away by the credit company's two employees and kept for four days would clearly come within the

provisions of the statute creating the offense, since there is nothing in it limiting the distance that the property should be carried away, nor the time it should be kept by the offender.

We therefore conclude that the court erred in acquitting defendant under the agreed facts, and the law is so certified.